*In re* C.C. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Rebecca R., Respondent-Appellant).

Fifth District   No. 5—97—0401

Opinion filed October 20, 1998.

Susan Burger, of Anna, for appellant.

Joe Jackson, State's Attorney, of Metropolis (Norbert J. Goetten, Stephen

E. Norris, and Kevin Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Mother appeals from the order entered by the circuit court of Massac County terminating her parental rights to both her daughter and her son. We affirm.

Mother had two children, one daughter (C.R.), born in August 1988, and one son (C.C.), born in September 1991. Both children have been in foster care since 1993, when their home environment was found to be injurious to their welfare. According to the petition for adjudication of wardship, the children had been left with caretakers who had previously been convicted of sexual offenses against children. At that time, the Department of Children and Family Service (DCFS) recommended a service plan that included such items as mother not having any contact with known sex offenders, not having any overnight guests at her residence, maintaining her house in proper order, and attending counseling and parenting classes.

In 1995, mother filed a petition for the return of her children. Mother had divorced her abusive husband (not the father of either child) by this time and had moved out of low-income housing. She had obtained employment and had begun residing with another individual in his trailer. At the court's suggestion, mother's new fiancé attended parenting classes and sexual abuse counseling with mother. Mother's petition was denied, however, after the trial court concluded that it was not in the best interests of the children that custody be restored to mother at that time. The evidence revealed that the trailer in which mother was then living was unfit and that her children did not know the fiancé. Mother also had kept in contact with convicted child molesters and refused to believe that C.R. had been a victim of sexual abuse. Mother came from a family in which the sexual abuse of children was an accepted tradition, and she was a victim of such abuse herself. Mother was reported to have told her social worker that such abuse did not kill her and will not hurt her children either. The evidence shows, however, that while in mother's care, C.R. had been sexually and physically abused by at least two men and now suffers from permanent psychological damage. She is hyperactive, violent, and sexually aggressive. She has tried twice to smother her little brother and had to be placed in separate foster care. Her behavior has become so bad that she requires medication to calm her down and constant adult supervision.

In 1995 DCFS filed a petition for adjudication of wardship and for appointment of guardian with power to consent to the adoption of

both children. The trial court subsequently terminated mother's parental rights on May 8, 1997, because mother failed to protect the children from conditions within their environment injurious to the children's welfare and also because she failed to make reasonable progress toward the return of the children within 12 months after the adjudication of neglect. All putative fathers' rights had already been terminated. Mother believes she made reasonable progress toward the return of her children. She points out that she moved into her own trailer, completed parenting classes, and attends regular counseling sessions for herself and her daughter. She does not believe it to be in the best interests of her children to have her parental rights terminated.

■ Courts will not lightly terminate parental rights. *In re J.P.*, 261 Ill. App. 3d 165, 174, 633 N.E.2d 27, 34 (1994). Accordingly, the parental rights of a nonconsenting parent may be terminated only upon a finding of unfitness, and such a finding must be supported by clear and convincing evidence. *In re L.N.*, 278 Ill. App. 3d 46, 49, 662 N.E.2d 152, 154 (1996); *J.P.*, 261 Ill. App. 3d at 174, 633 N.E.2d at 34. We, as a reviewing court, will not substitute our judgment for that of the trial court unless the trial court's decision is contrary to the manifest weight of the evidence. *L.N.*, 278 Ill. App. 3d at 49, 662 N.E.2d at 154; *J.P.*, 261 Ill. App. 3d at 174, 633 N.E.2d at 34.

■ A parent may be found unfit if he or she fails to make reasonable efforts to correct the conditions that were the basis for the removal of the child or fails to make reasonable progress toward the return of the child within 12 months after an adjudication of neglect. *In re Clarence T.B.*, 215 Ill. App. 3d 85, 101, 574 N.E.2d 878, 889 (1991); 705 ILCS 405/2—29 (West 1996); 750 ILCS 50/1(D)(m) (West 1996). Each case of an adjudication of parental unfitness is unique, and comparisons with other cases are not appropriate. *T.B.*, 215 Ill. App. 3d at 101, 574 N.E.2d at 889.

■ Whether a parent's efforts to correct conditions that were the basis for the removal of the child or children are reasonable involves a subjective judgment based upon the amount of effort reasonable for the parent whose rights are sought to be terminated. *J.P.*, 261 Ill. App. 3d at 174, 633 N.E.2d at 34. An assessment as to whether a parent has made reasonable progress toward the return of his or her children involves an objective judgment based upon the amount of progress made by the parent. At a minimum, some reasonable or demonstrable progress toward the goal of reunification must be shown. *J.P.*, 261 Ill. App. 3d at 175, 633 N.E.2d at 35; see also *L.N.*, 278 Ill. App. 3d at 50, 662 N.E.2d at 154. Whether a small amount of progress is reasonable must also be determined with proper regard for the best interests of

the child or children. *In re A.H.*, 215 Ill. App. 3d 522, 530, 575 N.E.2d 261, 266 (1991). Courts must not allow children to live indefinitely with the lack of permanence inherent in foster homes. *A.H.*, 215 Ill. App. 3d at 530, 575 N.E.2d at 267. A trial court does not have to wait forever for a parent to make reasonable efforts or progress toward regaining the custody of his or her children. *In re D.J.*, 262 Ill. App. 3d 584, 591, 634 N.E.2d 1306, 1311 (1994). Ultimately, all parental rights must yield to the best interests of the child. *In re A.P.*, 277 Ill. App. 3d 592, 598, 660 N.E.2d 1006, 1011 (1996); *A.H.*, 215 Ill. App. 3d at 531, 575 N.E.2d at 267. In this instance, the trial court waited almost four years and still mother was not close to being able to provide for the needs of her children. Accordingly, we find no error in the trial court's decision to terminate mother's parental rights.

◼ The evidence clearly reveals that mother has not made reasonable progress toward regaining the custody of her children. Since the adjudication of neglect, she has lived in several places with several different people. She ultimately moved into her fiancé's trailer and requested that the children be allowed to move in with them—with a man they did not even know. The court allowed visitation with the fiancé, and he attended parenting classes and counseling sessions with mother. While mother's fiancé may be an acceptable parent, the home environment into which they planned to bring the children was not. The trailer was not fit for human habitation and at times did not even have running water or heat. Mother claims they made all necessary repairs, but those social workers who visited the trailer still found the environment lacking. Shortly before the final hearing, mother moved into her own trailer. A recent "flurry of activity" regarding her goals immediately prior to the adjudicatory hearing on the petition to terminate her parental rights can hardly overcome years when her efforts were minimal at best. See *A.P.*, 277 Ill. App. 3d at 599, 660 N.E.2d at 1011. Mother has completed parenting classes three times (although the evidence suggests that her attendance was sporadic), yet she still does not know how to best care for her children. She still does not even accept the fact that C.R. was sexually abused while in her care. She has little concept how to care for her psychologically disturbed daughter and believes the child's problems stem from foster care. The failure to acknowledge that a child has been sexually abused, which precludes taking adequate steps to protect the child in the future, justifies a finding that the parent has failed to make reasonable progress toward the return of a child. *T.B.*, 215 Ill. App. 3d at 101, 574 N.E.2d at 889. Given such circumstances, the trial court could reasonably conclude that both children probably would be left unprotected from molestation if ever they were put back in mother's custody. Ad-

ditionally, mother's son has spent most of his life in foster care and has no real parent-child relationship with her. Mother may have a steady job and continue to attend counseling sessions, but the question still remains whether mother understands her children's problems and can protect them from further neglect and abuse. The rate of mother's progress is not reasonable considering the right of the children not to be left in limbo for such a length of time. The best interests of the children, in this instance, demand the termination of mother's parental rights.

For the aforementioned reasons, we affirm the judgment of the circuit court of Massac County.

Affirmed.

MAAG and KUEHN, JJ., concur.